UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.:  21-30799 (AMN) |
| CHRISTOPHER FAHERTY and | : | Chapter 13 |
| JACLYNN FAHERTY, | : | |
| *Debtors* | : | |
| | : | |
| ROBERTA NAPOLITANO, | : | |
| CHAPTER 13 TRUSTEE, | : | |
| *Movant* | : | |
| | : | |
| v. | : | |
| CHRISTOPHER FAHERTY and | : | |
| JACLYNN FAHERTY, | : | |
| *Respondents* | : | Re:  ECF No. 12 |
| | : | |

## MEMORANDUM OF DECISION AND ORDER
## OVERRULING CHAPTER 13 TRUSTEE'S OBJECTION TO
## DEBTORS' EXEMPTION IN REAL PROPERTY AND SCHEDULING
## A FURTHER STATUS CONFERENCE REGARDING CHAPTER 13
## TRUSTEE'S OBJECTION TO DEBTORS' EXEMPTION IN PERSONAL PROPERTY

Before the court is a dispute between the debtors Christopher Faherty and Jaclynn Faherty ("Debtors") and the Chapter 13 Trustee about whether a recent change to a state exemption statute applies retroactively, or, merely prospectively.  As relevant here, Connecticut Public Act 21-161 (the "2021 Act")[1] repealed and replaced Conn.Gen.Stat. § 52-352b, increased the homestead exemption from $75,000 to $250,000, and, increased and changed the exemption for vehicles.  The 2021 Act became effective on October 1, 2021.  The basic question presented here is whether, as the Debtors argue, they are each entitled to the $250,000 homestead exemption in this bankruptcy case.  The Trustee

---

[1]      House Bill 6466 ("An Act Concerning Property that is Exempt From a Judgment Creditor") became Public Act 21-161.

objects, arguing the 2021 Act is not retroactive and thus the Debtors are limited to the lower exemption amounts in both real property and personal property. The Debtors filed this Chapter 13 bankruptcy case shortly after the 2021 Act became effective, on October 6, 2021 ("Petition Date").

The Debtors and the Chapter 13 Trustee filed memoranda of law on this issue, which was one of first impression at the time. Oral argument was held. Subsequently, United States Bankruptcy Judge James J. Tancredi entered a decision on a similar challenge to a homestead exemption brought by a Chapter 7 Trustee in *In re: Elaine M. Cole,* 21-21071 (JJT)(*see,* 2022 WL 1134626 and <u>Exhibit A</u>, attached).

<u>Facts</u>

Here, on Schedule A/B ("Property"), the Debtors valued their residence, 19 Apple Tree Lane, Hamden, Connecticut (the "Residence"), which they own jointly, at $325,000.00. ECF No. 1, p. 10. Schedule D ("Creditors Who Have Claims Secured by Property") reflects a mortgage on the Residence with a balance in the amount of $79,181.00 in favor of PHH Mortgage Services. ECF No. 1, p. 20. On Schedule C ("The Property You Claim as Exempt"), the Debtors claimed as exempt the equity in the Residence in the amount of $245,819.00 pursuant to Connecticut General Statutes § 52-352b(21). ECF No. 1, p. 17.

On Schedule A/B, the Debtors also listed their joint ownership interests in three automobiles, a 2017 Honda CRV, valued at $18,107.00, a 2016 Honda HRV, valued at $11,678.00, and a 2016 Honda Civic, valued at $11,521.00. ECF No. 1. p. 11. Schedule D reflects secured loans on these vehicles with balances in the amounts of $13,868.00 (in favor of Wells Fargo Dealer Services), $2,470.00 (in favor of Bank of America, N.A.)

and $1,708.00 (in favor of Connex Credit Union), respectively. ECF No. 1, pp. 19-21.  On Schedule C, the Debtors claimed as exempt the equity in these vehicles in the amounts of $4,239.00, $2,761.00 and $7,000.00, respectively, pursuant to Connecticut General Statutes § 52-352b(10). ECF No. 1, p. 17.

On November 10, 2021, Roberta Napolitano, Chapter 13 Trustee, timely filed her Objections To Property Claimed As Exempt.  ECF No. 12.  The Trustee contended the Debtors are not entitled to the full amounts of the exemptions they claim in the Residence and motor vehicles because the increased exemption amounts of Conn. Gen. Stat. § 52-352b must be applied prospectively, not retrospectively, *i.e.*, that the amendments to the statute cannot affect the enforcement of debts incurred prior to its effective date, October 1, 2021.

Discussion

While the *Cole* case decided by Judge Tancredi is a Chapter 7 case and this is a Chapter 13 case, this difference does not change the legal analysis.  Because I agree with the legal analysis and conclusion Judge Tancredi reached in *In re: Cole,* and because I could not say it better, I adopt the legal reasoning and conclusion set forth at pages 13 through 24 of the decision, attached to this Memorandum of Decision and Order as Exhibit A.  Although the *Cole* case involved a challenge to an exemption in real property only, the analysis and conclusion apply to the retroactive effect of the 2021 Act as to both the real property and personal property involved in this case.

Conclusion

I have considered all other arguments made by the parties in their memoranda and during oral argument, and find them to be without merit.  The higher exemption amounts and other changes provided by the state's 2021 Act are available to the Debtors in this bankruptcy case because the Petition Date is after the effective date of the 2021 Act.

ACCORDINGLY, it is hereby

ORDERED:  The Chapter 13 Trustee's objection to the Debtors' exemptions in real property is overruled; and it is further

ORDERED:  The Chapter 13 Trustee's objection to the Debtors' exemptions in personal property remains pending so the parties may meet and confer regarding the substance of the objection in light of this Memorandum of Decision and Order; and it is further

ORDERED:  On or before May 6, 2022, the Chapter 13 Trustee shall meet and confer with Debtors' counsel regarding the objection to exemptions claimed in personal property and shall file a status report identifying any remaining issue for the court to determine; and it is further

ORDERED:  A continued hearing regarding the Chapter 13 Trustee's objection to the personal property exemptions shall be held on May 12, 2022, at 11:00 a.m.

Dated this 20th day of April, 2022, at New Haven, Connecticut.



Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut

<span style="color:red">EXHIBIT A</span>

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### HARTFORD DIVISION

| | | |
|---|---|---|
| IN RE: ) | CASE No. | 21-21071 (JJT) |
| ) | | |
| ELAINE M. COLE, ) | CHAPTER | 7 |
| Debtor. ) | | |
| ) | RE: ECF Nos. | 16, 54, 64, 98, 100 |

### MEMORANDUM OF DECISION ON
### TRUSTEE'S OBJECTION TO HOMESTEAD EXEMPTION

Pending before the Court is the Trustee's Objection to the Debtor's claimed homestead exemption. The Trustee challenges the Debtor's assertion of Connecticut's homestead exemption on both factual and legal grounds. Factually, the Trustee argues that the Debtor's property does not qualify as her homestead for exemption purposes because, as of the petition date, the Debtor did not occupy the property as her primary residence.  As a legal matter, the Trustee argues that the Debtor is not entitled to assert an exemption pursuant to Connecticut's newly amended homestead exemption, which became effective on October 1, 2021, because the claims of the Debtor's creditors arose prior to the effective date of the statute. The Court will address each argument in turn.

I.   INTRODUCTION

Under Connecticut state law, a debtor may claim a homestead exemption in "owner-occupied real property . . . used as a primary residence." Conn. Gen. Stat. § 52-352a(5); *In re Maresca*, 982 F.3d 859, 863 (2d Cir. 2020). To be entitled to Connecticut's homestead exemption, as of the petition date, a debtor must own and occupy the property, and the property must be the debtor's primary residence. *See In re Kujan,* 286 B.R. 216, 220 (Bankr. D. Conn. 2002). On July 12, 2021, Governor Ned Lamont signed Public Act 21-161 (the "2021 Act" or

"Amendment") into law, thereby amending Connecticut's homestead exemption[1] by repealing the prior version of the statute, renumbering its provisions, and increasing the homestead exemption from $75,000 to $250,000, effective October 1, 2021.

The threshold issue the Court must decide in this case is whether a debtor's claimed homestead that was owned and occupied as her primary residence for 26 years, loses its status as a "primary residence" for exemption purposes when the debtor, pre-petition: (1) enters into an agreement to sell that property; (2) signs a lease for a separate apartment with a pre-petition effective date; and (3) sells or otherwise moves a significant amount of personal property out of the claimed homestead. If the answer is yes, then the Trustee's Objection to the Debtor's Homestead Exemption (ECF No. 54) must be sustained and the Court's inquiry ends. If the answer is no, and the claimed homestead remains the Debtor's "primary residence" for exemption purposes, the Court must then determine whether the Amendment to the homestead exemption shall be applied "retroactively,"[2] thereby entitling the Debtor to assert the increased $250,000 homestead exemption, or whether it shall be applied only prospectively, thereby limiting the 2021 Act's application only as to any claim arising on or after October 1, 2021.

Here, Elaine Cole (the "Debtor") commenced the instant Chapter 7 case on November 22, 2021 ("Petition Date"). The Debtor valued her residence, 17 Burrows Street, Mystic, Connecticut (the "Property"), at $589,000 (ECF No. 36, p. 3). On Schedule C, the Debtor claimed as exempt the equity in the Property in the amount of $250,000 pursuant to Connecticut's newly amended homestead exemption.[3] *Id.* at p. 16.

---

[1] *See* Conn. Gen. Stat. § 52-352b ("Original Homestead Exemption").
[2] With respect to the contest presently before the Court, the term "retroactive" shall refer to the application of the 2021 Act as against any claim arising before October 1, 2021, for those debtors who filed for bankruptcy protection after the 2021 Act's effective date.
[3] *See* Conn. Gen. Stat. § 52-352b(21) ("Amended Homestead Exemption").

The Trustee objected to the Debtor's claimed exemption in the Property, arguing that "although the [Debtor's] Chapter 7 case was commenced after the effective date of the [2021 Act] increasing the homestead exemption from $75,000.00 to $250,000.00, the claims of the unsecured creditors arose prior to the effective date in the change in the Statute." ECF No. 16, ("Objection"). The Trustee later amended his Objection, raising the additional factual argument that the Property "was not the Debtor's homestead on the date of the Chapter 7 filing as it was not owner-occupied real property used as the Debtor's primary residence." ECF No. 54, ("Amended Objection").

The Debtor responded to the Amended Objection by thoroughly outlining the legislative history of Connecticut's Original Homestead Exemption, discussing the decisions of Connecticut Bankruptcy Courts that grappled with the issue of the Original Exemption statute's application (whether retroactive or prospective), distinguishing between procedural and substantive statutes and discussing what effect, if any, that distinction has on the 2021 Act's applicability. ECF No. 64, ("Response"). In her Response, the Debtor argues that because the "2021 increase in the amount of the exemption leaves the preexisting exemption scheme intact and merely changes the amount of the protection available to the debtor," the Amendment is procedural and should therefore be applied retroactively. *Id.* at 10. Alternatively, the Debtor argues that if the Amendment is deemed substantive, it nonetheless was enacted with a remedial purpose, and as such, should be applied retroactively. *Id.* at 12–13.

Following receipt and review of the Debtor's Response, and in connection with a hearing on the issues raised in the Amended Objection and the Trustee's prosecution thereof, the Court ordered further briefing on certain of the legal issues (*i.e.* the retroactive or prospective effect of the Amendment and the earmarks of a procedural and substantive statute) and the

3

factual issues (*i.e.* the attributes of the Property as the Debtor's homestead) raised in the Trustee's Amended Objection. S*ee* ECF No. 70. An evidentiary hearing on the Trustee's Amended Objection was thereafter held on March 4, 2022. ECF No. 84.

For the reasons set forth herein, the Court finds that the Trustee has failed to satisfy his burden in demonstrating that the Debtor's claimed homestead exemption is improper. The Court further finds that the Amendment to Connecticut's homestead exemption is entitled to retroactive application. Accordingly, the Trustee's Amended Objection is hereby OVERRULED, and the Debtor is entitled to claim her homestead exemption in the total amount of $250,000.

II.   JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. §§ 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

III.   FACTS

**Pre-Petition Activity**

1.      In September of 1995, the Debtor purchased the Property located at 17 Burrows Street in Mystic Connecticut. At all relevant times, the Debtor owned the Property.

2.      Facing serious health issues, the challenges of aging, and the financial decline of her business, the Debtor made the decision to move out of the Property sometime between August and October of 2021.

3.      On August 23, 2021, the Debtor signed a listing agreement for the sale of the Property.

4.       On September 12, 2021, the Debtor entered into a contract to sell the Property. Under the contract, the closing was to take place no later than December 30, 2021—a date following her bankruptcy filing

5.      On October 27, 2021, the Debtor signed an 8-month Congregate Lease ("Lease") with Mystic River Homes Congregate, allowing her access to the apartment ("Apartment") as of November 1, 2021. By check dated October 27, 2021, the Debtor paid $1,425 for the first month's rent payment under the Lease.

6.      From September 1995 to November 1, 2021, the Debtor indisputably owned and occupied the Property as her primary residence.

7.      The Debtor did not reside at the Apartment as of November 1, 2021.

8.      In early to mid-November of 2021, the Debtor began the process of moving certain personal property from the Property to the Apartment. The Debtor consigned substantial furniture and other personal property to Leone's Auction Gallery during that period.

**The Debtor's Bankruptcy Case**

9.      On July 12, 2021, Governor Lamont signed Public Act No. 21-161 into law. The 2021 Act repealed Connecticut's Original Homestead Exemption and increased the exemption from $75,000 to $250,000. By its terms, the 2021 Act took effect on October 1, 2021.

10.      On November 22, 2021, the Debtor commenced the instant Chapter 7 case.

11.      The Debtor valued the Property at $589,000.

12.      TD Bank held a first mortgage secured by the Property in the amount of approximately $120,830. The State of Connecticut, Department of Economic and Community

Development held a second mortgage secured by the Property in the amount of approximately $115,275.

13.     The Debtor claimed an exemption in the Property in her Petition as of November 22, 2021, in the amount of $250,000 pursuant to Connecticut's Amended Homestead Exemption.

14.     As set forth in the sale contract signed on September 12, 2021, and subsequently amended on September 27, 2021, the closing of the Property was to take place no later than December 30, 2021.

15.     On December 23, 2021, the sale of the Debtor's Property closed.

**The Debtor's Testimony**

13.     At the evidentiary hearing, the Debtor testified as follows:

(a) In early 2021, facing severe health issues and the dissolution of her business, the Debtor submitted an application with Mystic River Homes Congregate ("MRHC").

(b) By letter dated March 30, 2021, MRHC acknowledged receipt of the Debtor's application and indicated that she had been placed on a waitlist. The letter states that the waitlist is updated each year.

(c) The Debtor was under the impression that the waitlist was long, and that it typically takes approximately 2.5 years for an applicant to be placed in a unit.

(d) Much to her surprise, by letter dated August 10, 2021, MRHC confirmed an interview with the Debtor scheduled for August 20, 2021 to consider her candidacy as a resident of MRHC.  During the interview, the Debtor learned that there were 6 applicants who were being considered for only 4 unit vacancies.

(e) When the Debtor signed the listing agreement on August 23, 2021, she did not know at that time if she had been selected for an available unit at MRHC.

(f) After signing the contract to sell the Property on September 12, 2021, reality hit that the Debtor had a deadline by which she needed to be out of the Property.

(g) The Debtor signed the Lease with MRHC on October 27, 2021, and shortly thereafter began the piecemeal process of moving personal property out of the Property. The Debtor did not hire a moving company to help with this process, but instead enlisted the help of family members, a handyman, and various neighbors.

(h) Although the Debtor had access to the Apartment effective November 1, 2021, the Debtor continued to sleep at the Property on a box spring and mattress through, at least, the Petition Date. The Debtor's medications and other personal belongings also remained at the Property through the Petition Date and she continued to cook and eat meals at the Property during that time.

(i) MRHC had a policy where residents were required to inform the facility if they were planning to sleep there overnight and if they intended to be present for the daily scheduled meals.

(j) The Debtor did not inform MRHC of her intent to begin living in the Apartment until sometime around November 23 or 24, 2021.

(k) Until the eve of the closing, the Debtor still had personal belongings at the Property and considered and treated, owned, and occupied the Property as her home and primary residence.

7

14.    The Debtor's testimony was not rebutted.

IV.    DISCUSSION

a.    Connecticut's Homestead Exemption

In Connecticut, any "natural person" may claim an exemption in her homestead up to $250,000, calculated based on the fair market value of the property less the amount of any consensual or statutory lien. Conn. Gen. Stat. § 52-352b(21). There are three requisites for the Property to constitute the Debtor's statutory homestead under Connecticut law: (1) the Debtor must own the Property; (2) the Debtor must occupy the Property; and (3) the Property must be the Debtor's primary residence. *In re Kujan,* 286 B.R. 216, 220 (Bankr. D. Conn. 2002).

"In addition, in attempting to construe the Connecticut homestead exemption, we must bear in mind the firmly established canon of interpretation instructing that, in order to effectuate the purpose of exemptions, such laws are to be liberally construed in favor of the debtor. *Caraglior v. World Sav. & Loan (In re Caraglior),* 251 B.R. 778, 782–82 (Bankr. D. Conn. 2000). 'For this reason, no mere technicality should defeat the right of exemption, and whenever the claim to an exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption should be allowed.' *Id.* at 783." *KLC, Inc. v. Trayner*, 426 F.3d 172, 176 (2d Cir. 2005).

Absent any timely objection, a debtor's claim of exemption is presumptively valid. 11 U.S.C. § 522(*l*). As the objector, the Trustee bears the burden of proving, by a preponderance of the evidence, that the Debtor's claimed homestead exemption is improper. *See* Fed. R. Bankr. P. 4003(c); *In re Shaw*, 622 B.R. 569, 578 (Bankr. D. Conn. 2020). "This burden applies to each element of" the Trustee's Amended Objection. *See id.* Accordingly, to prevail on his Objection that the Property does not constitute the Debtor's homestead for purposes of Conn. Gen. Stat. §

52-352b(21), the Trustee must produce evidence to rebut the Debtor's presumptively valid

exemption demonstrating, that as of the Petition Date: (1) the Debtor did not own the Property;

(2) the Debtor did not occupy the Property; or (3) the Property was not the Debtor's primary

residence. Only if the Trustee presents sufficient evidence to rebut the presumption, does the

burden of production then shift to the Debtor to present unequivocal evidence demonstrating that

her exemption is proper. *See In re Riemann*, 2009 WL 3254486 at *2 (Bankr. D. Conn. 2009)

(citations omitted). "The burden of persuasion, however, always remains with the objecting

party." *Id.*

It is undisputed that the Debtor owned the Property as of the Petition Date. The Trustee's

argument is, instead, that as of the Petition Date, the Debtor neither occupied the Property nor

used it as her primary residence. In support of this argument, the Trustee argues that pre-petition,

the Debtor: moved a significant amount of her personal property from the Property; consigned

the remainder of her furniture; listed the Property for sale; entered into an agreement to sell the

Property; and signed a lease for the Apartment with a pre-petition effective date. This pre-

petition conduct, the Trustee contends, evidences the Debtor's intent to instead make the

Apartment her primary residence. In response, the Debtor argues that, notwithstanding these pre-

petition events, she nonetheless intended that the Property be her primary residence for

bankruptcy purposes and accordingly she continued to occupy and reside at the Property and

prepare for its sale through the post-petition closing date of December 23, 2021.

No Connecticut case has defined the term "occupy" as used in Connecticut's Homestead

Exemption. "A fundamental canon of statutory construction is that, unless otherwise defined,

words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v.

U.S.*, 444 U.S. 37, 42 (1979) (citation omitted). *Black's Law Dictionary* (11th ed. 2019) defines

"occupy" as "to live or stay in (a place)" and the *Merriam-Webster's Collegiate Dictionary* (11th ed. 2014) defines the term as "to reside in as an owner or tenant." Instructed by these definitions, the Court finds that the Debtor did in fact "occupy" the Property within the meaning of Connecticut's homestead exemption. The evidence and arguments advanced by the Trustee have failed to persuade this Court otherwise.

On cross-examination, the Debtor credibly testified that the moving process was emotional, difficult, and proceeded in piecemeal fashion. Over the course of a few weeks, family members moved some furniture from the Property to the Apartment, a few new pieces of furniture were delivered directly to the Apartment, a handyman brought various items to the auction house, and neighbors made many trips bringing small boxes and clothing from the Property to the Apartment. And although there was a point when the Debtor was residing in the Property with only the "bare bones," she testified credibly that, at least through and including the Petition Date, she continued to sleep at the Property on a box spring and mattress, and that at all relevant times, her medications were at the Property, there was food for her meals in her refrigerator, there were pots and pans that she used to cook those meals, and there was a folding table and two chairs that she used for sitting and eating. She essentially and intentionally held the Property as her home, as she had for 26 years, until the closing of its sale.

While the Trustee's evidence demonstrates that, pre-petition, the Debtor sold certain items, decided to move out of the Property, and moved other items from the Property to the Apartment, it does not, however, demonstrate that the Debtor no longer occupied the Property or then intended to relinquish her primary residence. Accordingly, the Court finds that, by living, staying, and continuing to reside in the Property, even with minimal contents, and consistent with her intentions, the Debtor occupied the Property within the meaning of Connecticut's

homestead exemption. Indeed, during closing arguments, the Trustee conceded that the Debtor

very well may have occupied the Property as of the Petition Date, but still argued that the

Debtor's conduct nonetheless evidenced her contrary intent to make the Apartment, and not the

Property, her primary residence.[4]

Not only is there no present requirement for a homeowner in Connecticut to have the

*intention* to make her property her permanent residence to utilize her homestead exemption, but

Connecticut case law also makes clear that a homeowner may have a primary residence for

exemption purposes without spending all of her time at the property.

> The term "primary residence" as it is used in the exemption statute
> has not been defined in any Connecticut case. However, cases from
> other jurisdictions . . . indicate that the facts and circumstances
> concerning the owner's absence from or presence in the property are
> determinative in concluding whether or not the property is to be
> treated as a "primary residence."

*Konover Constr. Corp. v. Silberstein*, 2003 WL 21805576 at *2 (Conn. Super. July 22, 2003).

Further, "[r]esidence, when used in a sense other than domicile, is one of the most

nebulous terms in the legal dictionary and can have many different meanings depending on the

context in which it is used . . . Residence is less inclusive than domicile, importing merely

having an abode at a particular place which may be one of any number of such places at which

one is, at least from time to time, physically present." *Phillips v. Phillips*, 2004 WL 503905 at *3

(Conn. Super. Feb. 25, 2004) (quoting *In re Frame*, 120 B.R. 718, 723 (Bankr. S.D.N.Y. 1990)).

Unlike the court in *Konover* that, when faced with the issue of whether a debtor's

property constituted their primary residence for exemption purposes, looked to factors such as

the address on the debtor's driver's license, where the debtor was registered to vote, where

---

[4] If such were the case as a matter of law, every debtor who secured pre-petition substitute living arrangements to
facilitate a sale would be vulnerable to a loss of their homestead exemption.

service of process was made, where the debtor received mail, how often the debtor slept at the property, and whether there was anyone else occupying the property, the Court here was only presented with evidence by the Trustee related to the removal and sale of some personal property, an imminent closing of a sale of the Property, and execution of a Lease for a new Apartment. The totality of the facts and circumstances this Court must weigh as evidence, particularly those advanced by the Debtor, simply do not tip in favor of finding that the Debtor's Property was not her primary residence as of the Petition Date.

As previously discussed herein, the Debtor credibly testified that as of the Petition Date, even though most of her personal belongings had either been sold or moved into the Apartment, she was still sleeping at the Property, cooking and eating meals at the Property, and preparing for its sale. The Debtor also credibly testified that it was on or about November 23 or 24, 2021, when the Debtor notified the congregate home about her intention to begin living in the Apartment. On the other hand, the Trustee argues that the "Debtor's signed Lease and her signed sale contract for the Property joined with her prepetition move of furniture demonstrate that the [Apartment] not the Property, was the Debtor's primary residence as of the Petition Date."

The mere fact that the Debtor signed a Lease for the Apartment and a sale contract for the Property, paid the first month's rent for the Apartment pre-petition, and had the ability to move into the Apartment as early as November 1, 2021, did not somehow strip from the Property its status as the Debtor's primary residence. The Trustee presented no evidence that the Debtor was sleeping or eating at the Apartment pre-petition, that she was receiving mail at the Apartment, or that she otherwise updated her mailing or voting address to reflect that she was living at the Apartment. Moving personal belongings into the Apartment and paying the first month's rent, without more, is not sufficient for this Court to determine that the Apartment was the Debtor's

12

primary residence as of the Petition Date or to rebut the presumptive validity of her assertion of the homestead exemption.

Accordingly, the Court finds that the Trustee has failed to satisfy his burden and establish, by a preponderance of the evidence, that as of the Petition Date that the Debtor did not hold and occupy the Property as her primary residence. With that finding, the Court now turns to whether the Amendment to Connecticut's Homestead Exemption shall be applied retroactively or only prospectively.

> b.  The Applicability of Connecticut's Amended Homestead Exemption

Prior to 1993, Connecticut did not have a homestead exemption. In 1993, Connecticut created the Original Homestead Exemption, with subsection (t) providing protection for the "homestead of the exemptioner to the value of seventy-five thousand dollars, provided value shall be determined as of the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it." Public Act 93-301 ("Original Act") was the enabling act for the Original Homestead Exemption, and Section 3 of the Original Act expressly provided: "This act shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date."

In 2021, Public Act 21-161 amended Connecticut's Original Homestead Exemption for the first time, increasing, among other things, the homestead exemption from $75,000 to $250,000. Section 1 of the 2021 Act states in part: "Section 52-352b of the general statutes is repealed and the following is substituted in lieu thereof (Effective October 1, 2021)." (emphasis added). Unlike the Original Act, the 2021 Act makes no reference to its applicability.

The Debtor maintains that the 2021 Act should apply retroactively while the Trustee maintains that, like the Original Homestead Exemption, it should only be applied prospectively.

"Whether to apply a statute retroactively or prospectively depends upon the intent of the

legislature in enacting the statute." *Davis v. Forman Sch.*, 54 Conn. App. 841, 853–54 (1999)

(citing *State v. Magnano*, 204 Conn. 259, 284 (1987)).

> [I]n the absence of any clear expression of legislative intent to the
> contrary [changes to statutes that create or impose substantive new
> obligations are therefore] presumptively prospective. . . . By
> contrast, [p]rocedural statutes have been traditionally viewed as
> affecting remedies, not substantive rights, and therefore leave the
> preexisting scheme intact. . . . [Accordingly] we have presumed that
> procedural . . . statutes are intended to apply retroactively absent a
> clear expression of legislative intent to the contrary . . . . We have
> noted, however, that a procedural statute will not be applied
> retroactively if considerations of good sense and justice dictate that
> it not be so applied. . . .

*State v. Nathaniel S.*, 323 Conn. 290, 295 (2016) (citations, internal quotations and footnotes

omitted). "While there is no precise definition of either [substantive or procedural law], it is

generally agreed that a substantive law creates, defines and regulates rights while a procedural

law prescribes the methods of enforcing such rights or obtaining redress." *Samuels v. Comm'r of

Corr.*, 117 Conn. App. 740, 744 (2009).

The Trustee relies on Connecticut jurisprudence finding that the Original Homestead

Exemption was a substantive law to support his argument that the Amendment is also a

substantive law and must therefore be only applied prospectively. Shortly after the effective date

of the Original Act, Connecticut bankruptcy debtors unsuccessfully attempted to claim

exemptions in their homes against debts incurred prior to the Original Act's effective date of

October 1, 1993. As recognized by those courts that considered the application of the Original

Homestead Exemption, the *creation* of that exemption was clearly substantive in nature; for the

first time, it established a protection for a homeowner of $75,000 of equity.

14

i.    *The Original Homestead Exemption*

In *In re Morzella*, 171 B.R. 485 (Bankr. D. Conn. 1994), Judge Krechevsky sustained a

Chapter 7 trustee's objection to the debtor's use of the new homestead exemption found in Conn.

Gen. Stat. § 52-352(b), where the objecting creditor had a claim from an automobile accident

that accrued prior to the statute's effective date. The *Morzella* court reviewed the Original Act,

the new statutory language, and the definitions of "exempt" and "homestead" found in Conn.

Gen. Stat. § 52-352a(c) and (e) to determine:

> The Act provides that it "shall take effect October 1, 1993, and shall
> be applicable to any lien for any obligation or claim arising on or
> after said date." 1993 Conn. Pub. Act 301, § 3. The most reasonable
> interpretation of this section is that the Act applies to any
> prejudgment attachment, *see* Conn. Gen. Stat. § 52-278b, or
> judgment lien, *see id.* § 52-380a, placed on the exemptioner's
> residence for the purpose of collecting a debt incurred as a result of
> an obligation or claim arising on or after October 1, 1993.
>
> Legislative history generally supports this interpretation of the
> exemption's application. Representative Holbrook, who introduced
> the legislation, explained in legislative hearings on the Act that "we
> are not talking about anything here that is retroactive. It takes effect
> with any unsecured loans that occur after [October 1, 1993] . . . ."
> Conn. Gen. Assembly House Proceedings 1993, Vol. 36, Part 30.
> [hereinafter House Proceedings] at 10824, 10855–56.

*Id.* at 486–87.

Judge Shiff mirrored the *Morzella* analysis in *In re Duda*, 182 B.R. 662 (Bankr. D. Conn.

1995) *aff'd Gernat v. Belford*, 192 B.R. 601 (D. Conn. 1996), *aff'd* 98 F.3d 729 (2d Cir. 1996).

> Under Connecticut law a statutory enactment affecting substantive
> rights, as Pub. Act 93-301 indisputably does, is presumed to have
> only prospective effect in the absence of a clear and unequivocal
> expression of a contrary legislative intent. Conn. Gen. Stat. §55-3 .
> . . . The plain language of Pub. Act 93-301 supports a prospective
> application only.

*Duda,* 182 B.R. at 665 (citations omitted).

15

The *Duda* court found the plain language of the Original Act to be clear—"it is apparent that the homestead exemption was *effective* October 1, 1993, but only as to claims arising on or after that date." *Id.* at 667. As this language was plain and unambiguous, there was no need to look at legislative history to interpret it. *Id.* at 668. If somehow more was needed to determine the statute's intent, the statement from Representative Holbrook, as quoted in *Morzella*, confirmed that the statute was not to be retroactive. *Id.*

*Duda* recognized that the Original Act "was intended to provide relief to homeowners in a troubled economy and to bring Connecticut law in line with that of other states which generally provide some homestead exemption or tenancy by the entirety protection." *Id.* at 668–69. The Original Act would protect homeowners from foreclosure "to the extent of post-Act obligations which ripen into judgment liens. The legislative statements relied upon by the debtors should be read to refer to that more limited, but nevertheless significant, relief. . . ." *Id.* at 669.

In rejecting the debtors' construction of the Original Homestead Exemption, the *Duda* court identified inconsistencies with the legislative history and policy. Specifically, it stated:

> **If that legislative body wished to provide immediate relief to debtors at the expense of existing creditors, why would it not have simply provided an effective date and eliminated the second clause of the Section 3, or even expressly stated its intent that existing claims would be subject to the exemption? . . .**
>
> Finally, I note that, according to the legislative history, Connecticut was one of only six states with no homestead exemption and of those one of two that did not recognize a tenancy by the entirety. The Act did not merely increase an existing exemption, it created that protection in the form of a very substantial homestead exemption. It is therefore not surprising that the General Assembly sought to ease the impact of the Act on lenders who had extended credit in reliance on settled law which provided no homestead protection.

*Id.* (emphasis added).

16

*Gernant*, which affirmed the *Duda* ruling, further found it appropriate to give the

Original Act only prospective effect pursuant to Conn. Gen. Stat. § 55-3, as the newly created

homestead exemption was a substantive change in the law.

> Further, giving this exemption prospective effect only is in keeping
> with the rule of statutory construction embodied in [Conn. Gen.
> Stat.] § 55-3 (1995), that "no provision of the general statutes, not
> previously contained in the statutes of the state, which imposes any
> new obligation on any person or corporation, shall be construed to
> have a retrospective effect." This statute codifies a rule of presumed
> legislative intent that statutes affecting substantive rights shall apply
> prospectively only, absent a clear and unequivocal expression of a
> contrary legislative intent."

*Gernant,* 192 B.R. at 604.

 The rule codified at Conn. Gen. Stat. § 55-3 "is rooted in the notion that it would be

unfair to impose a substantive amendment that changes the grounds upon which an action may

be maintained on the parties who have already transacted or are already committed to litigation."

*King v. Volvo Excavators AB*, 33 Conn. 283, 292 (2019).

*ii.    The Amended Homestead Exemption*

The 2021 Act repealed Connecticut's Original Homestead Exemption, eliminated the

provision addressing the statute's applicability, recast former subsection t, and increased the

exemption as set forth therein from $75,000 per debtor to $250,000. The Amended Homestead

Exemption now provides, in pertinent part:

> The following property of any natural person shall be exempt: . . .
> The homestead of the exemptioner to the value of two hundred fifty
> thousand dollars, provided value shall be determined as the fair
> market value of the real property less the amount of any statutory or
> consensual lien which encumbers it.

As a general rule, "where a statute, with reference to one subject contains a given

provision, the omission of such provision from a similar statute concerning a related subject . . .

17

is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because the General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." *Asylum Hill Problem Solving Revitalization Ass'n v. King*, 277 Conn. 238, 256–57 (2006).

As Judge Shiff did in *Duda*, this Court too recognizes the significance of the Original Act's language that it "shall be applicable to any lien for any obligation or claim *arising on or after said date.*" (emphasis added). Here, the 2021 Act contains no analogue to the second clause of Section 3 of the Original Act specifically limiting the Act's application, there has been no legislative pronouncement as to the applicability of the 2021 Act like Representative Holbrook's in 1993, and had the legislature intended the Amendment to apply only to debts incurred after its effective date, it could have included the same "clear language used in the [Original] Act . . . to make it obvious that the intention of the Legislature was not to affect the ability to obtain a remedy when the obligation or claim was already in existence on [the effective date]." *Morzella*, 171 B.R. at 487.

Instead, the legislature did exactly what Judge Shiff suggested it do if it "wished to provide immediate relief to debtors at the expense of existing creditors," by repealing the Original Homestead Exemption and substituting it with the Amended Exemption which "simply provided an effective date and eliminated the second clause of Section 3 [of the Original Act]." *Duda*, 182 B.R. at 669. These facts underscore the Court's duty to refrain from reading a clause into the statute when the legislature has left it out. *See Osuna v. Gov. Emp. Inc. Co.,* 2014 WL 1515563 at *8 (E.D.N.Y. 2014) ("[W]here [the legislature] includes particular language in one section of a statute but omits it in another [the court] should refrain from reading into the statute

a phrase that [the legislature] has left out of the latter section.") (citing *Moreno-Bravo v. Gonzales*, 463 F.3d 253 (2d Cir. 2006)).

Additionally, some principles of statutory construction require courts to construe statutes in manners that will not thwart the legislature's intended purpose or lead to absurd results. *Hall v. Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 302 (1997). Courts "must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. *Peck v. Jacquemin*, 196 Conn. 53, 63–64 (1985). If there are two possible interpretations of a statute, courts will adopt the more reasonable construction over one that is unreasonable. *State v. Uretek, Inc.*, 207 Conn. 706, 719 (1988); *State v. Parmalee*, 197 Conn. 158, 165 (1985)." *Id.* at 303.

Whether the legislature intended to provide a long overdue adjustment to allow greater protections for Connecticut homeowners, as is urged by the Debtor, or whether the legislature's intention, as urged by the Trustee, was merely to "retain Connecticut residents who might otherwise leave the state for the greener pastures and higher homestead exemptions of our neighbors," the Trustee's interpretation of the 2021 Act would nonetheless frustrate either purpose. If accepted, the Trustee's interpretation would significantly delay the effect of the 2021 Act, as the increased exemptions would only be applicable against debts incurred on or after October 1, 2021. Most immediately, the 2021 Act would have little to no effect, as in the present case, and its full effect would not be felt for years. *See Hall,* 241 Conn. at 303 ("We presume that the legislature . . . did not intend to enact meaningless provisions."). Further, if the Original Homestead Exemption were to be effective against prior creditors and the Amended Homestead Exemption were to be effective against prospective creditors, the consequences of a debtor

potentially asserting two applicable state homestead exemptions would be incongruous and would irreconcilably complicate the administration of a bankruptcy estate.

The prospective application of the Amended Homestead Exemption urged by the Trustee would also yield an absurd or unworkable result within the meaning of Conn. Gen. Stat. § 1-2z.[5] For all practical purposes, it can be assumed that most, if not all, debts in bankruptcy cases filed since the 2021 Act's effective date of October 1, 2021, as well as for those cases filed in the near future, were incurred prior to October 1, 2021. Given that the 2021 Act *repealed* the Original Homestead Exemption, if accepted, the Trustee's argument would ostensibly result in a temporary abolition of Connecticut's Homestead Exemption in its entirety, leaving some debtors with no homestead exemption to claim.  Such a result signals to this Court an erroneous construction on the part of the Trustee. *See Duda*, 182 B.R. at 666 ("[S]tatutes are to be construed so as to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve; a bizarre result signals an erroneous construction.").

*iii.*    *The Trustee's Constitutional Challenge*

Lastly, the Trustee argues that the United States Constitution, and more specifically, Article 1 § 10 (the Contracts Clause), bars the 2021 Act from having retroactive effect. In support of this argument, the Trustee relies on two opinions from the Supreme Court dating back to the 1870s that have ostensibly never been expressly overruled, holding that the application of a homestead exemption to pre-existing debt would violate the Contracts Clause. *See Edwards v. Kearzey*, 96 U.S. 595 (1877); *see also Gunn v. Barry*, 82 U.S. 610 (1872). In response, the Debtor argues that the Second Circuit's 2009 decision in *CFCU Cmty. Credit Union v. Hayward*,

---

[5] Conn. Gen. Stat. § 1-2z ("Plain meaning rule") provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous *and does not yield absurd or unworkable results*, extratextual evidence of the meaning of the statute shall not be considered." (emphasis added).

20

552 F.3d 253 (2d Cir. 2009) makes clear that no issue implicating the Contracts Clause exists when a state is increasing its homestead exemption.

While the Trustee relies on cases from the 1870s, more recent Supreme Court guidance on the applicability of the Contracts Clause comes from the 2018 decision in *Sveen v. Melin*, 138 S. Ct. 1815 (2018). The Contracts Clause provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Constit., Art. I, § 10. As set forth in *Sveen*, in order to determine whether "a law crosses the constitutional line," courts should employ a two-part test, first determining "whether the state law has operated as a substantial impairment of a contractual relationship," and only once that showing has been made, should a court then review the purpose and necessity of the state law. *Sveen*, 138 S. Ct. at 1821–22. "Even if a state law substantially impairs a contract, it will not be deemed unconstitutional so long as it is justified by 'a significant and legitimate public purpose . . . such as the remedying of a broad and general social or economic problem.'" *Hayward*, 552 F.3d at 267 (quoting *Energy Reserves Grp., Inc. v. Kan. Power and Light Co.*, 459 U.S. 400, 411–12 (1983)).

In determining whether a state law substantially impairs a contractual relationship, courts consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 138 S. Ct. at 1822. The Trustee argues that "a huge change to the homestead exemption" would substantially impair the Debtor's creditors' contracted rights because when "making a decision whether to extend credit, the creditor assumes the existing $75,000 homestead exemption but otherwise assumes that the remaining equity in a debtor's home will be available to satisfy that creditor's claims. By more than tripling the homestead exemption, the

21

legislature has substantially changed that creditor's rights and expectations, undermining his or her contractual rights." ECF No. 98, at pp.13–14.

As *Sveen* recognized, "not all laws affecting pre-existing contracts violate the [Contracts] Clause." *Sveen*, 138 S. Ct. at 1821. Although the increased amount of the Amended Homestead Exemption arguably impairs the rights of the Debtor's creditors, as it reduces the amount of equity available to satisfy a debt, the Court finds that it does not *substantially* impair those rights. As the Second Circuit underscored in *Hayward* when holding that an increase in New York's homestead exemption did not violate the Contracts Clause, the Amended Homestead Exemption does not now "exempt an entire class of property previously available to creditors." *Hayward*, 552 F.3d at 268. Connecticut's Original Homestead Exemption has limited creditors since 1993, and since that time the Debtor's Property has been protected "to some extent from the satisfaction of a money judgment or exempted from the bankruptcy estate." *Id.* Any creditor extending credit should understand that homestead exemptions exist under both state and federal law, and should anticipate periodic adjustments to the exemption statutes.

For these same reasons, the Court finds that the 2021 Act, while allegedly modifying the expectations of the parties, does not substantially interfere with the parties' reasonable expectations under a contract. The increased Amended Homestead Exemption does no more to the parties' expectations than if the Debtor took a second mortgage out on the Property, thereby significantly reducing the amount of equity available to creditors.[6]

Even if the Court found the impairment of the contractual relationship as substantial, the application of the Amended Homestead Exemption to pre-enactment debts "serves the

---

[6] The Trustee's intimation that such "expectations" as to a homestead are somehow vested, sacrosanct, or even reasonable ignores that a debtor may freely sell the property, lien the property, or move to Florida to garner more expansive homestead rights.

significant and legitimate public purpose . . . of expanding the class of debtors who will be able

to keep their homes despite declaring bankruptcy." *Hayward*, 552 F.3d at 268. Accordingly, the

Court finds that the Contract Clause of the Constitution is not offended by a retroactive

application of the Amended Homestead Exemption to pre-existing debts.

          *iv.*        *The Debtor is entitled to the full $250,000 homestead exemption*

        Based on the absence of language, and more specifically the removal of previous

language included in the Original Act, barring the application of the 2021 Act to pre-enactment

debts, this Court cannot infer that the Connecticut legislature intended the 2021 Act to apply only

prospectively. Unlike the Original Act, which expressly limited its applicability "to any lien for

any obligation or claim arising on or after [its effective] date," the 2021 Act contains no

comparable clause addressing whether it applies to pre-enactment debts. The Court here will

refrain from reading an anti-retroactivity provision into the 2021 Act where none exists. *See*

*Hayward*, 552 F.3d at 265. This proposition is particularly compelling where the Connecticut

legislature otherwise repealed the Original Homestead Exemption.

        The *Morzella* and *Duda* courts recognized that, based upon the plain language of the

Original Act and the legislative history, Connecticut's homestead exemption was to be applied

prospectively only because the Original Act *created* a new protection for a homeowner against

judgment creditors who may have extended credit in reliance on settled law which had provided

no homestead protection.[7] In contrast, the Amended Homestead Exemption leaves the

preexisting exemption scheme intact and merely changes the amount of the protection available

---

[7] *See Morzella,* 171 B.R. at 487 ("Both the legislative history and the relatively clear language used in the Act appear to make it obvious that the intention of the Legislature was not to affect the ability to obtain a remedy when the obligation or claim was already in existence on October 1, 1993."); *see also Duda,* 182 B.R. at 669 ("The [Original] Act did not merely increase an existing exemption, it created that protection in the form of a very substantial homestead exemption.").

to a debtor. The 2021 Act did not create the right of a Connecticut homeowner to assert a homestead exemption, nor did it alter the grounds upon which a debtor can assert a homestead exemption; it merely expanded the existing amount of equity in a homestead that can be protected.

Absent a clear expression of legislative intent to the contrary, and based upon the legislature's presumptively intentional elimination of limiting language and its explicit repeal of the Original Homestead Exemption, the Court finds that the Amended Homestead Exemption shall be applied retroactively. Any construction to the contrary would lead to an absurd, unreasonable, and unworkable result. Having determined that the language of the statute and the legislative intent is clear, the Court need not reach the issue of whether the 2021 Act is procedural or substantive in nature.

V.   CONCLUSION

For the foregoing reasons, the Court finds that the Trustee has failed to meet his burden in order to overcome the presumptive validity of the Debtor's claimed homestead exemption in the Property located at 17 Burrows Street in Mystic, Connecticut. The Debtor owned and occupied the Property as her primary residence as of the Petition Date. The Court further finds that the Debtor is entitled to claim the full $250,000 exemption as set forth in the Amended Homestead Exemption. Finally, the Court finds the Contracts Clause of the United States Constitution is not offended by the retroactive application of the 2021 Act to pre-existing debts. Accordingly, it is hereby:

**ORDERED:** That the Trustee's Objection is OVERRULED; and it is further

**ORDERED:** That the Debtor is entitled to assert a homestead exemption in the total amount of $250,000 as set forth in Connecticut's Amended Homestead Exemption.

IT IS SO ORDERED at Hartford, Connecticut this 15th day of April 2022.

*James J. Tancredi*
*United States Bankruptcy Judge*
*District of Connecticut*